UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JOAN ANDERSEN, individually and as a
representative of enrollees in Medicare+Choice
residing in Suffolk County, et al.,

                       Plaintiffs,

         - against -

MICHAEL LEAVITT, Secretary of the
U.S. Department of Health and Human Services,[1]
et al.,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM & ORDER**
on County of Suffolk's Motion for
Leave to File Brief *Amicus Curiae*
(doc. #62)
**03-cv-6115** (DRH) (ARL)

**APPEARANCES:**

*For Proposed* Amicus Curiae *County of Suffolk:*
Suffolk County Attorney
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
       **By:**    **Christine Malafi, County Attorney**

*For the Plaintiff:*
CAHN & CAHN, LLP
445 Braodhollow Road, Suite 332
Melville, NY 11747
       **By:**    **Richard C. Cahn, Esq.**

*For the Defendants:*
Roslynn R. Mauskopf, United States Attorney
Eastern District of New York
1 Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201
       **By:**    **Michael J. Goldberger, Asst. U.S. Attorney**

---

[1] Michael Leavitt has replaced Tommy Thompson as U.S. Secretary of Health and Human Services. Pursuant to Federal Rules of Civil Procedure 25(d), Secretary Leavitt is automatically substituted as Defendant in this action in place of Mr. Thompson.

1

**HURLEY, Senior District Judge:**

In connection with Plaintiffs' claim of unconstitutionality of the Medicare statute, the County of Suffolk (the "County") seeks the Court's permission to file an *amicus curiae* brief addressing the Defendants' Motion for Summary Judgment and the Plaintiffs' opposition thereto. In sum, the County supports the Plaintiffs' position that the administration of the Medicare statute causes disparate treatment to those senior citizens (and certain others) residing in Suffolk County, as well as the counties of Nassau, Westchester, and Rockland, as opposed to the counties of Richmond, Queens, Kings, Bronx, and New York. Plaintiffs favor the Court granting the County permission to file its proposed *amicus curiae* brief. Conversely, the Defendants oppose permitting the County to file such an *amicus curiae* brief. For the reasons stated below, the Court GRANTS the County's Motion for Leave to File *Amicus Curiae* Brief.

## I. BACKGROUND

For a discussion of the Parties' positions and arguments on Plaintiffs' claims of constitutional violation of the Equal Protection clause of the Fifth Amendment, readers are referred to Defendants' Memorandum of Law in Support of their Motion for Summary Judgment and Plaintiffs' opposition memorandum of law; the Court will assume the reader's familiarity with the factual and procedural background of this case as provided therein.[2] However, as to the instant Motion, the Court furnishes the following additional background.

---

[2] Likewise, the Court will assume the reader's familiarity with the terms and definitions used herein, but as defined in the moving papers.

On December 15, 2005, after the Defendants requested a pre-motion conference seeking permission to file a motion for summary, the Court waived its pre-motion conference requirement and set a briefing schedule. Ultimately, on September 13, 2006, upon completion of briefing, Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment were fully submitted to the Court for its consideration.

Five months later, the County filed a letter requesting leave to file an *amicus curiae* brief. (*See* Letter from Christine Malafi, Suffolk County Attorney, to Hon. Denis R. Hurley, U.S. District Court, E.D.N.Y. (Feb. 23, 2007) (doc. #58).) Quickly thereafter, Plaintiffs consented to the County's request. (*See* Letter from Richard Cahn, Cahn & Cahn, LLP, to Hon. Denis R. Hurley, U.S. District Court, E.D.N.Y. (Feb. 26, 2007) (doc. #59).) Conversely, the Defendants filed a response opposing the request. The primary basis for the Defendants' opposition was that the County's request was untimely, (*see* Letter from Michael Goldberger, Asst. U.S. Attorney, E.D.N.Y., to Hon. Denis. R. Hurley, U.S. District Court, E.D.N.Y., at 2 (Mar. 14, 2007) (doc. #60)), and that, in any event, the County's request did not offer any arguments or information useful to the resolution of the Defendants' Motion for Summary Judgment. (*See id.*)

The Court set a briefing schedule allowing the County to file its motion and giving both the Plaintiffs and Defendants an opportunity to respond. In addition, the Court directed the County "to address the Defendants' arguments of timeliness and usefulness" and "to append its proposed amicus brief to its moving papers." (*Andersen v. Thompson*, No. 03-cv-6115, electronic order (E.D.N.Y. Mar. 20, 2007).)

## II. Discussion

### A. Standard for Allowing the Filing of an Amicus Curiae Brief in District Court

"A district court has broad discretion to grant or deny an appearance as amicus curiae in a given case." *Citizens Against Casino Gambling in Erie County v. Kempthorne*, 471 F. Supp. 2d 295, 311 (W.D.N.Y. 2007) (citing *United States v. Ahmed*, 788 F. Supp. 196, 198 n.1 (S.D.N.Y. 1992), *aff'd*, 980 F.2d 161 (2d Cir. 1992)); *see also Long v. Coast Resorts, Inc.*, 49 F. Supp. 2d 1177, 1178 (D. Nev. 1999) ("There is no inherent right to file an amicus curiae brief with the Court.  It is left entirely to the discretion of the Court."); *Fluor Corp. & Affiliates v. United States*, 35 Fed. Cl. 284, 285 (1996).  "'A court may grant leave to appear as an amicus if the information offered is 'timely and useful.'" *Long*, 49 F. Supp. 2d at 1178 (quoting *Waste Mgmt. of Pennsylvania v. City of York*, 162 F.R.D. 34 (M.D. Pa. 1995)).

#### 1.    Usefulness

The primary reason to allow *amicus curiae* briefing is that the *amicus curiae* "offer insights not available from the parties," thereby aiding the Court.  *Citizens Against Gambling*, 471 F. Supp. 2d. at 311 (quoting *Onondaga Indian Nation v. New York*, 97-CV-445, 1997 U.S. Dist. LEXIS 9168, at *7 (N.D.N.Y. June 25, 1997) (further citation omitted)).  There are certain instances when the filing of an *amicus* brief is "desirable."  *Id.*

> An *amicus* brief should normally be allowed when a party is not represented competently or is not represented at all, when the *amicus* has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the *amicus* to intervene and become a party in the present case), or when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. Otherwise, leave to file an *amicus curiae* brief should be denied.

*Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J.) (quoted in *Citizens Against Casino*, 471 F. Supp. 2d at 311). Moreover,

> [t]he court is more likely to grant leave to appear as an amicus curiae in cases involving matters of public interest . . . . Accordingly, a public body clothed with powers and duties affecting the public interest, and involved in the subject matter presented before the court, may be entitled to the favor of appearing as amicus curiae.

4 Am. Jur. 2d Amicus Curiae § 3 (updated May 2007) (footnotes omitted). However, the filing of an *amicus curiae* brief should not be used to address "wholly new issues not raised by the parties." *Citizens Against Casino*, 471 F. Supp. 2d at 311; *see also Waste Mgmt.*, 162 F.R.D. at 36 ("'An amicus cannot initiate, create, extend, or enlarge issues.'" (quoting *Rawlins v. Hanan*, 868 F. Supp. 1356, 1358-59 (M.D. Ala. 1994))).

      2.      <u>Timeliness</u>

Since parties should have their "dispute resolved without any unnecessary delay," *Long*, 49 F. Supp. 2d at 1178, where the filing of an *amicus curiae* brief would cause such a delay, it should not be accepted. *See id.* ("It would be unacceptable for an *amici* brief to cause a prolonged delay in the litigation."); *cf. Fluor*, 35 Fed. Cl. at 286 (filing *amicus curiae* brief in midst of briefing cross motions for summary judgment acceptable).

**B. The Instant Case**

      1.      <u>The Parties' Positions</u>

In her Declaration in Support of Motion to File Brief Amicus Curiae, County Attorney Christine Malafi heeded the Court's directives and addressed both the usefulness and timeliness arguments raised by the Defendants. As to the usefulness of the County's brief, the County

stated, *inter alia*:

> 5. Suffolk County has interests similar, but not identical, to the plaintiffs in this matter. In order to protect the general health and welfare of its residents, as well as to maintain its fiscal stability, the County wishes to take all available steps to ensure the accessibility of quality, affordable healthcare to its senior citizen population. . . . [T]he County has the distinct interest in the protection of the vitality and stability of its economy, the diversity of its population, and the general welfare of all its residents. The financial hardship placed upon Suffolk County senior citizens due to defendants' implementation of the challenged M+C and MA ("M+C/MA") programs has had, and will continue to have, a negative impact upon both the economy and general well-being of the County and all of its residents. As a direct result of the paucity of non-premium payment M+C/MA programs in Suffolk County, the County's senior citizens are forced to spend their limited incomes on premiums for Medicare programs, and, as a result, those County seniors have fewer dollars to spend in their local economy. . . .

> 6 . . . [T]he lack of affordable healthcare has a significant impact upon the County's residents in general, the County itself, and the County's senior citizen residents. The County has information and expertise in both the policy and legal implications of the disparity in treatment accorded to its senior citizen residents under the challenged M+C/MA programs. Furthermore, because the County has the responsibility for the general health and welfare of its general population, including its entire senior population, it can bring to this Court a fuller understanding of the broad implications and potential adverse impact a decision upholding the current Medicare policies in effect in Suffolk County.

(Malafi Supp. Decl., ¶¶ 5-6, Mot. File Br. Amicus Curiae.) On the issue of the timeliness of the

County's request to file an *amicus curiae* brief, Declarant Malafi stated:

> 10. [T]he County first learned of the existence of this lawsuit in December of 2006. Prior to that time, County Legislator Edward Romaine had interaction with an organization known as Seniors Against Discrimination ("SAD"). Legislator Romaine received SAD's December 2006 newsletter sometime that month [which] . . .mentioned this litigation . . . . Legislator Romaine contacted the

plaintiffs' counsel, Richard Cahn, to learn more about the lawsuit and the issues raised in the lawsuit. After discussions with Mr. Cahn, Legislator Romaine requested that counsel to the Legislature draft an introductory resolution, to be sponsored by himself, directing the County Attorney to file an *amicus* brief in the case.

11.     The introductory resolution was laid on the table, as required, at the very first Legislative meeting of 2007, in January 2007. It proceeded expeditiously through the required legislative committee approval process and was unanimously approved at the next general meeting of the Suffolk County Legislature on February 6, 2007. The County Executive signed the resolution on February 16, 2007. By letter dated February 23, 2007, [Declarant Malafi's] office made a letter application to this Honorable Court for permission to file a motion seeking permission to file an *amicus* brief. The County's actions have not been dilatory. It is respectfully submitted that the County acted with all due haste in making the application to file an *amicus* brief. . . .

(*Id.*, ¶¶ 10-11.)

In its proposed *amicus curiae* brief, the County presents two arguments: (1) the disparate cost, availability, quality, and quantity of Medicare options and services in Suffolk County has a significant negative fiscal and social impact on the County and its residents (*see* County's Proposed *Amicus Curiae* Br. at 6-8, attached to Malafi Supp. Decl.); and (2) there is no rational basis for calculating health care costs of Suffolk County Medicare beneficiaries on their county of residence (*see id.* at 9-10).

Expanding on its first position, the County states that there are only four companies offering M+C/MA program contracts to senior citizens and "under *nearly* every plan . . . enrollees must pay monthly premiums" which is in stark contrast to surrounding counties, including Nassau, Queens, Kings, and Bronx counties. (*Id.* at 7.) The County asserts that, due to lower capitation rates in Suffolk County, "[f]ewer companies want to do business in Suffolk

County, and Suffolk County residents have fewer options, and seniors in Suffolk have no choice but to pay monthly premiums for Medicare coverage, putting Suffolk seniors at a severe financial disadvantage from their neighbors . . . ." (*Id.*) The County asserts that because Suffolk seniors spend more on health care, they have less to spend on other items. (*See id.* at 8.) This, in turn, means Suffolk seniors "contribute less to the overall sales tax revenues" of the County, which the County relies heavily upon to meet its financial needs. (*See id.*) The County argues "[a]ny diminution of sales tax receipts greatly impacts the County's economy and the lives of all 1.5 million residents of the County, because the loss of sales tax revenue *may* have to be made up by increases in other types of taxes and fees." (*Id.* (emphasis added).) The Count further speculates that some Suffolk seniors may be forced to leave the County because they can no longer afford to live there and this "will have a severe negative effect on the County and its residents." (*Id.*)

The County next avers that "the M+C/MA payment formula is not rationally related to the Government's legitimate goals of containing Medicare costs while expanding health care options." (*Id.* at 9.) In essence, because of Medicare formulas setting capitation rates and reimbursement rates, Suffolk County seniors must pay more for benefits under M+C/MA programs than do seniors in neighboring counties. This is arbitrary and irrational given that "[t]he Long Island and metropolitan area should be treated as one region for health delivery purposes." (*Id.*) To support this contention, the County points the Court to "CMC's single 'Medicare Part B' list of medical providers and single schedule of per-procedure costs to be applied in all four suburban counties and three of New York City's boroughs." (*Id.* (citations omitted).) It also notes that "HMO provider directories often merge counties." (*Id.* (citations omitted).) Therefore, there is no rational reason for the difference in costs of M+C/MA programs

incurred by Suffolk seniors.

In their opposition to the County filing an *amicus curiae* brief, the Defendants assert that the County's request is untimely as it was made three years after this action was initiated, one year after Defendants served their initial motion for summary judgment, and five months after briefing of summary judgment motions was completed. (*See* Defs.' Opp'n to County's Mot. for Leave at 3.) Defendants contend, "[a]n amicus curiae application is untimely if it will unduly delay resolution of the proceeding." (*Id.* (citing *Long v. Coast Resorts, Inc.*, 49 F. Supp. 2d 1177, 1178 (D. Nev. 1999)).) It is their belief that "[r]e-opening motion practice at this point will unduly delay resolution of this case." (*Id.*) Defendants also argue that the County's *amicus* brief does not offer any information or argument that is useful to the Court. (*See id.*) Rather, the County advances the same arguments presented by Plaintiffs. (*See id.* at 4.) Moreover, whether the County has an interest in the outcome of this case is irrelevant to the Court's determination whether the County provides "any useful input for the Court in deciding the legal issues raised on summary judgment." (*Id.* at 4-5.) Therefore, the County's request should be rejected.

Unsurprisingly, the Plaintiffs support allowing the County to file an *amicus* brief. They urge the Court to exercise its discretion in granting the County's Motion for Leave. (*See* Pls.' Reply to County's Mot. for Leave at 2.) Plaintiffs further assert that the County has an independent concern "with the financial and social stability of its population, and with stemming the outflow of senior citizens who can no longer afford to stay [in the County] as residents." (*Id.* at 3.) Therefore, Plaintiffs contend, "[i]t is entirely appropriate for the County to bring this specific *potential* impact of the case to the Court's attention," and "the County's perspective *may* be of significant value to the Court . . . ." (*Id.* at 3 (emphasis added).)

Finally, in reply to the Defendants' opposition to its Motion for Leave, the County challenges the Defendants' assertion that the County's request is untimely since (1) the County acted as soon as it learned of the case, (2) no judgment has been entered in the case yet, and (3) the Defendants have not articulated any prejudice they will suffer if the County is permitted to file its amicus brief. (County's Reply Mem. at 1-2.) Furthermore, as supported by the case originally cited by the Defendants, *i.e., Waste Management of Pennsylvania v. City of York*, 162 F.R.D. 34 (M.D. Pa. 1995), the County is in the position of being able to "advise the Court on matters of public interest that are implicated in this case . . . . ," *i.e.*, "the effect the defendants' challenged policies have on the County's economy, and the cultural and social well-being of its residents." (County's Reply Mem. at 2.) Acknowledging that "[i]t is entirely a matter of the Court's discretion as to whether to accept an amicus brief" (*id.* at 3), the County asks that its Motion for Leave to File Brief *Amicus Curiae* be granted.

2.  Usefulness

Having directed the County to file its proposed *amicus* brief together with its Motion for Leave, the Court has the benefit of examining the County's position in ruling on the Motion for Leave. The Court finds that, in its *amicus* brief, the County offers an insight not available from the Plaintiffs or Defendants, namely, that the Defendants' implementation of the challenged M+C/MA program has potential economic and social implications on not just the County's senior population, but its entire population. While similar to Plaintiffs' argument of higher costs for medical care compared to senior citizens in neighboring counties, the County's economic and social impact arguments are not the same as the Plaintiffs'. Thus, the County's *amicus* brief

presents the Court with a unique perspective that may help the Court in its determination of the issues presented by this case. *See, e.g., Ryan*, 125 F.3d at 1063; *Citizens Against Casino*, 471 F. Supp. 2d at 311.

                    <u>3.</u>        <u>Timeliness</u>

The Court is not persuaded by the Defendants' argument that the County's Motion for Leave is untimely. The Court cannot fault the County for its relatively "late" discovery of this case as there is no indication that it was well-publicized, thereby warranting a conclusion that the County should have acted sooner. Indeed, the record demonstrates that the County acted promptly after first learning of this action. Moreover, the Court will take judicial notice that because it is a municipal body, the County had to act through its legislative body (as opposed to an individual legislator acting unilaterally).

Further, granting the County's Motion for Leave will not cause *unnecessary* delay. *See Long*, 49 F. Supp. 2d at 1178; *Fluor*, 35 Fed. Cl. at 286. Although the Defendants are correct that the Parties' cross-motions for summary judgment have already been fully submitted, no judgment has been rendered on those motions. And, as previously mentioned, by requiring the County to file its proposed *amicus curiae* brief with its Motion for Leave, the Court has already reviewed that *amicus* brief. Therefore, there will be no unnecessary delay by allowing its filing before the Court files its judgment on the Parties' cross-motions.

## CONCLUSION

For the foregoing reasons, the County's Motion for Leave to File Brief *Amicus Curiae* (doc. #62) is GRANTED.  The Court deems the County's Proposed *Amicus Curiae* Brief (*see* doc. #62-3 ("Exhibit A-Amicus Memo")) filed as of the date of this Memorandum & Order.

Furthermore, both Plaintiffs and Defendants shall each be given until August 24, 2007, to file a response, if any, to the County's *Amicus Curiae* Brief, with such responsive brief not to exceed ten (10) pages.  To the extend Plaintiffs or Defendants wish to reply to the other's response, they shall do so no later than August 31, 2007, with such reply limited to a three-page letter brief.

**SO ORDERED**.

Dated: Central Islip, New York
      August 13, 2007

/s/
Denis R. Hurley,
United States Senior District Judge